Case No. 25-1566, Christopher Hemwall v. Adam Douglas. Oral arguments not to exceed 15 minutes per side. Mr. Mijas, you may proceed to the appellate. If I could have a moment to get situated. Your Honor, thank you for the opportunity to be here before you. I think this case is not about attorney neglect or a busy schedule. It hinges on whether the district court could resolve functional incapacity causation and diligence on a paper record after acknowledging that this is an unsettled area of this circuit's law. I think this turns on a narrow, equitable tolling question in which there's no dispute that the habeas petition was filed after the AEDPA deadline. The question is really whether the correct standard was applied by the district court and whether it could reject tolling without a hearing where the record could have included evidence of counsel's incapacity and overlapping family medical emergencies. So, like, Maples and Holland, Maples, et cetera, talk about abandonment, right? Correct. And below you said there was no abandonment. Why isn't that the end of the inquiry? I mean, why don't we just say, okay, we're done because you can't demonstrate extraordinary circumstances? Because I think the wrong standard is to say that absolute abandonment is the only way that we do equitable tolling. There are extraordinary circumstances that enter into people's lives and punish counsel for attempting to persevere while communicating. You hear counsel, as your friends pointed out on the other side, you know, attended 10 court hearings, did other things. Your client was aware the deadline was approaching. In fact, your client, I think, thought it was sooner than July and was worried about it. Yet not even a protective, nothing was filed.  Your Honor, I don't think the case law says that there absolutely has to be an absolute requirement to file something. In addition, Your Honor, I think we're So is illness enough for extraordinary circumstances? Because I think our courts said otherwise, as have most of the circuits. I don't think that the argument being made is that illness alone. I think the argument being made is that the COVID conditions hampering communication, COVID illness and post illness, and extraordinary circumstances of a child undergoing a severe neurological issue that entailed cardiologist visits, neuropsych exams, CT scans, MRIs, that is what happened here. And so it's not necessarily just an illness. It is a conflagration of multiple instances that take this past the normal events of life and take it into an extraordinary circumstance. Well, how do you address, though, the point about your client having known that there was an upcoming deadline? It seems like to me that's kind of important to distinguish this situation from other cases in which there were extraordinary circumstances. I think that addresses a causation argument that the state is making, and it may very well be their strongest argument. But on that, was the client being reasonable in addressing this through retained counsel? And going through retained counsel and discussing it, was he also required to then proceed pro se and send something to the circuit court or to the district court to ask for some kind of adjournment or notice? And again, I don't think that is- Does he have an explanation for the number of months that expired after the time? I mean, is it his contention that he didn't know that there had been a deadline? His contention is that he was relying on counsel to do his job, and that is where he was going with it. And I think the question at that point becomes, is it enough that he was relying on retained counsel to proceed for him? I think the other, to come back to something that was said about- Does the law allow for that kind of an argument, though? Doesn't the individual himself have an obligation to look and see what the deadlines are? I don't think the law is clear on that. What's your best authority for allowing for a reliance on counsel? And if it's not clear, don't you lose? Say that again? If it's not clear, don't you lose? As a follow-up to Judge Bush's question. I don't think the law is clear on it. However, if you're relying on counsel, then I think that reliance means that he doesn't necessarily lose on that case. I think the other issue that- Do you have a case that you could cite? I do not, Your Honor. I think that's the lack of clarity. But I thought there's case law saying you can't rely on counsel alone. I don't think that's necessarily clear in that instance, Your Honor. I think when a client hires a counsel and relies on advice and they proceed while trying to continue communication with counsel, that is where the client himself is covered in terms of causation. So reliance on counsel, the case law suggests that a counsel's malpractice is not enough to establish equitable tolling. It has to be something greater. I take it, were you the counsel in the district court? I was, Your Honor. So do you concede that you committed malpractice? No, I don't, Your Honor. Why isn't that in the case? Because then you're suggesting that you didn't even reach a lower bar. So the court has said it has to be something greater than malpractice. You're standing up here and you're saying your conduct below wasn't even malpractice. Your Honor, I think that there were extraordinary circumstances in my life that caused us to miss that line. But doesn't counsel have a duty under the ethics rules? If counsel cannot accept a representation, I thought the ethics rules suggested that counsel needs to step away from the representation. I had mentioned that to the client. My client is comfortable in the representation of myself in this case. Doesn't that suggest that he essentially took the risk? Your Honor, I think he may have taken the risk, but I don't think that necessarily means that he was negligent in the causation aspect that the panel is arguing. Well, it seems to me if you tell him, look, I'm having all these family troubles, I perhaps should withdraw, and he says, no, I prefer that you stay, that he would take the risk that those troubles might interfere with a timely filing. That may take a risk, but I don't think that necessarily defeats tolling. I think when we talk about tolling, Your Honor, and we're talking about extraordinary circumstances in a person's life that causes this delay, there is room for the client to be comfortable in the attorney-client relationship to continue on, but not necessarily be told that you should have done more in order to have that tolling requirement in place. To something that was brought up earlier in terms of my docket being looked at, I think that's where the district court erred in looking at a docket at the trial level as opposed to what was going on in the AEDPA case. I don't think the standard is to look at an overall docket of what's going on, because the trial docket can be treated as . . . You agree you could have filed a protective petition. All the issues have to be exhausted, so it's not, as the other side points out, those issues are brought up in habeas generally. Yes. So why was the trial court wrong to look at that? I think in looking at it, it's irrelevant, but it isn't the final decision-making that caused it that it should have declined to have an evidentiary hearing to answer the questions at stake. Ultimately, the district court needed to decide whether there were extraordinary circumstances that allowed it to dismiss based on the missed deadline. Doing so by inference without testimony, I think, is error on the district court's part, especially during acute medical disruptions, not only in my life, but that of my daughter's. I think in that sense, although we're asking for you to grant equitable tolling, at the very least it should be remanded back to develop a factual record rather than rely on inference that even the district court says other courts may have done it differently and granted the certificate of appealability. Anything further? Okay. Thank you, counsel. You'll have your full rebuttal. Thank you. Good afternoon. May it please the court, Nick Johnson, Assistant Attorney General, appearing on behalf of Respondent. To warrant equitable tolling, Mr. Hemwall has to show three things. First, that his attorney's medical issues rose to the level of extraordinary circumstance, that his medical issues prevented a timely filing of his habeas petition, and third, that Mr. Hemwall diligently pursued his rights toward securing habeas relief. Mr. Hemwall can't establish any of those things, let alone all three. So we'd ask this court to affirm the district court. I want to start with Judge Thapar, your question about whether no abandonment effectively ends the inquiry. And I don't even know that we have to look even to Maples, which that's the reason that the certificate of appealability was granted in this case, was to address what Nasir said was an open question as to whether Maples had implicitly overruled Holland and therefore requires effective abandonment. If anything, that standard with respect to attorney incapacitation has already been set by this court in Robertson, 2010 decision. So if anything, not only is this case a little bit different than, or quite different, rather, than Nasir because it symbolizes attorney incapacitation, but this court doesn't even need to resolve that because the standard has already been set from Robertson. Can I ask you, I was debating whether the standard should be the same for medical circumstances for a lawyer versus medical circumstances for a pro se petitioner. So suppose extraordinary circumstances in a pro se petitioner's life made it difficult for the petitioner to file timely. Should we look at those two things the same, that if they're high enough to represent extraordinary circumstances for a petitioner, they should be equally high enough or equally applicable for counsel? Sure. So I think, if I remember correctly, I believe Patterson recognized that, that particularly with, I think it's Adda versus Scott, there it was a pro se petitioner who was claiming incompetence and Patterson recognized that the inquiry on diligence is interwoven with his medical incapacitation. So whether he could effectively and diligently pursue his rights was woven into the extraordinary circumstance. And in that case, it did require an evidentiary hearing to go into what exactly the extent of his illness was. And I would note that counsel wants an evidentiary hearing in this case, but this is the first time he's actually offering that or making that specific request. In the district court, the court noted that no request for an evidentiary hearing was made and therefore it's at this particular time, for the first time, that he is actually advocating for a remand for further factual development on this. But my question is more a legal one and it was just, if those same circumstances happen to a lawyer, is that enough for the client to get equitable tolling or should there be something more? Well, so those cases suggest if the client or pro se petitioner is mentally incapacitated, that could be enough to trigger equitable tolling. I'm just curious whether the standard should be the same for counsel or whether it should be something different. It may. I mean, I would note that because we are dealing with an attorney incapacitation, there's still the notion that Mr. Hemwall still has to show diligence, which is within a case of attorney incapacitation, those two are essentially completely devoid and they're rather two separate inquiries at that point. So I don't know that it's necessary to say that they're the same standard. I would agree with that. So diligence in the one context would just be what did the petitioner do? Why isn't it enough to suggest that diligence when you're a representative is just to rely on your counsel? That's why you have counsel. It would really come down to whether counsel was incapacitated if you were relying on counsel. Sure. So this court, even in Patterson, recognized that. I think this court was asking for a case on that. I think Patterson's instructive on that. It found that there the petitioner said that he was relying on counsel and therefore just did not make himself aware of what the deadlines were. And this court found that unavailing. And I think that it goes to the notion of when you're looking at diligence, it's things that are within the petitioner's control. And once Mr. Hemwall was made aware of the counsel's medical issues and that there were potential filing concerns, then he had a duty upon himself, just under plain diligence standard, to make himself aware of that and then determine when the filing deadline was and then file a pro se. Do you think that's also true? I'm trying to figure out how the two standards, the two elements interact. So what if in this case, or just another hypothetical case, counsel did engage in egregious enough conduct that we would call it abandonment? You think that wouldn't be enough to justify equitable tolling? If petitioner kept on calling counsel, you think that that case could still be doomed under the diligence prong? Because I usually think it's okay to rely on counsel, but then you take the risks. And if counsel is only negligent, then you're not going to get equitable tolling under our case law, right? So the question is, you're relying on counsel, that seems reasonable to me, but then counsel abandons you, so it creates the extraordinary circumstance. What other stuff must you show to get equitable tolling there with respect to reasonable diligence? Right. So, I mean, in Holland, the petitioner, once he found out that he was abandoned and he filed the petition the same day, that he realized that he didn't have counsel. But then isn't it that diligence always defeats extraordinary circumstance because every petitioner could know the deadline? So no matter what your counsel does, there's an obligation for them to know the deadline and file in time. Why do we even do the extraordinary circumstance? Why do we even do equitable tolling? Doesn't that just, the exception, swallow the rule? Not necessarily. I think, I mean, they are two separate inquiries. So give me a circumstance where the attorney effectively abandons, but the petitioner is still diligent and misses the deadline. Is still diligent. Yeah. Because you're saying they have an independent obligation to find out the deadline, and if they know the deadline, once they know it, file on time. Well, I think it's making, I think it's first and foremost filing, you know, either letters or having communication with their counsel and going through those steps to determine, you know, where are we at with the filing deadline and making at least some initiative at the outset to determine what the filing deadline is. First and foremost. So let's say he knows the filing deadline, he's relying on his attorney, and his attorney suffers a grave illness, and he's not aware of it. To the extent that it would amount to an extraordinary circumstance. Yes. Right. Well, he knows the deadline. Deadline's July 1. I'm making it up, but deadline's July 1. And he knows nothing's been filed as of the end of May. Right. Would he need to file as soon as he learned? Yes. Is that his counsel had missed the deadline? Taking some steps. I mean, is it the same day? That's what Holland, that's what indicated in Holland. But I think once he learns that there is, in fact, timing concerns and that he needs to, you know, that he's effectively abandoned, that he has no counsel at that point, that's when diligence steps in and how long does he wait in that point. And here, the record is contrary. So now you're saying, and I'm fine if this is the standard, that he has to know versus he has to find out. Because has to find out is different than has to know. I think making steps towards finding that out. Now, I mean, you could know the deadline, but you don't know that your counsel missed the deadline. And so you could rely on your counsel to file on time, but when you find out he didn't, then you, I'm envisioning at that point is when you need to file. Right. Would you agree? Yeah, I mean, and it's, yeah, how did the facts play out here? So I think your point about Holland was a good one, and I completely agree with Judge Bush that maybe diligence kicks in once you find out about attorney abandonment.  And so once the petitioner here found out, I mean, I know you dispute whether there was abandonment, but just once the attorney, once the client found out here, what did the client do? Well, and the record is unclear on that because it wasn't adequately developed. Why should we remand then for a hearing on that? Well, because it was, so in Nasir, the court, the specific facts of Nasir were that because it was self-proclaimed negligence on behalf of the attorney, and it was not only that, but then when the attorney was making that argument to the district court, they refused to or just never mentioned the fact that they had flouted requests to file on time and that they had, in fact, misled the petitioner in that respect. So there, in Nasir, it was, there wasn't, the reason there was a remand for further factual development, it was actually a remand in order to give the petitioner a full and fair opportunity to present his equitable tolling claim. Here, the notion that there needs to be a remand for further factual development, this is the first time that he's making that, is in this court. And the district court already recognized that at this point, the petitioner has the burden to produce those facts, and because he hasn't, the district court essentially accepted what he had, what he asserted was true. What was submitted to the district court in terms of evidence? So the filing was, as I understand it, I'm a little unclear, because the district court's opinion says that certain documents were filed under seal, and I went through the docketing sheet, tried to determine what that was, and I couldn't see anything. And he was, counsel was given permission to file the response to the motion to dismiss under seal, and he didn't. So I'm not entirely sure what was presented to the district court. The district court said certain documents were filed under seal. It reviewed them and found that petitioner still did not meet the... That might have been the medical records. Right, I believe so, yes. But in terms of, and that's part of what, to your question, Judge Bush, is when did he, or maybe it was Judge Murphy, when did he find out? The record is really unclear. He just makes a vague assertion that once he found out, he asked counsel what was going on, and they made efforts to file. What is clear is he thought the deadline was in May or something, right, and by July it had not been filed. Yeah, so when we filed our motion to dismiss, counsel's response essentially agreed with our calculations that the deadline was in May. The deadline was in July, right? It was, because I believe we did not consider the extra 60 days that the Supreme Court granted after COVID. So it was actually in July, but below there was no correction of that by petitioner. So there's no evidence, there was no evidence presented to the district court as to when the petitioner learned that his counsel had not filed. Correct, yeah. I believe all it indicates is that when petitioner learned, he contacted counsel, and the two of them made efforts to file on time, and there's no indication when that happened. I mean, the deadline was in July. The petition wasn't filed until October, so there's more than three months there. So, but again, it's not, in my view, it's not pertinent for the, or prudent for this court to remand when this is the first time that petitioner is asking for a remand for further factual development, and in particular when the reason that the certificate of appealability was granted was because of this arguable open question in the seer that's really not at issue here, because, again, that's an attorney misconduct. Can I ask you about that? So I think I agree that our cases could support your distinction between attorney misconduct and attorney incapacitation. Our cases seem to suggest we've already decided for incapacitation you need abandonment, and seer is suggesting it's still open for misconduct. But why would we adopt an abandonment rule for incapacitation and not for misconduct? It would make no sense to me to have different rules across the two contexts. Well, I don't know that there are different rules. I mean, Maples was a misconduct case, and there it said that he had to show effective abandonment. So I don't know that they are, that there are such a distinction. Yeah, I mean, isn't it effectively controlling as a matter of logic, if not as a matter of precedent? I'm sorry, I missed that first part. Isn't it effectively controlling as a matter of logic, if not precedent? Because it just wouldn't make any sense to say that there should be a lower standard for misconduct as compared to attorney incapacitation. I would agree with that, yes. Yeah. And I also know just, I mean, with that distinction, too, I mean, the court in Christensen v. Roper had already said that not every case in which a counseled habeas petitioner has missed EDPA deadlines will necessarily involve a conflict of interest. And that's really been, what was really key in Maples was that conflict there between the attorney and the severance of the attorney-client relationship at that point. So, anything further? All right. Thank you, counsel. Thank you. Your Honor, I think one of the key things that Judge Murphy indicated is fact by fact. Everything is fact specific to the case. I think that is why, if the court chooses to, that is why it should be remanded for factual discovery on this matter. Although, one more time. Why didn't you ask for it below? Just say it was an oversight, Your Honor. On the other hand, I still think it's clear error not to when we're looking at a record where the court acknowledges medical incapacity and circumstances. And that there is a dispute where another court could have seen it differently. So, I think it would have been hooved on the district court to further investigate, especially given records were given where there was sealed documents to it submitted to the district court. I think what happens here is that we are creating a standard where there has to either be complete abandonment or complete incapacity in order to qualify for tolling. Overall, I think that's bad policy to say that it has to totally stop an attorney in his tracks or her tracks and say we will not equitably toll the period unless you can prove that attorney could not function at all. And that is a part of where the district court erred. When the district court looked at other areas of that practice within this district and said, well, you were functioning here or there. It's easy enough to triage scheduled cases, deadlines, especially with the help of paralegals or a partner. As opposed to the slice of the law, which is the AEDPA, which is nuanced and very intricate. I think that is why the standard is to look at what happened within this case and not the overall practice of the attorney in order to decide whether there's tolling appropriate. And because it is a case-by-case basis, because it is not just a generalized standard across the board, an evidentiary hearing was necessary in this case, whether asked for or not. Otherwise, the court is simply making inferences where the clear resolution would have been, especially when the court acknowledges that there could be a difference of opinion how to act. You err on the side of caution and develop the record. So I think that this point, you don't need to decide whether every attorney medical crisis warrants tolling. It simply needs to hold where there is evidence, causation, diligence are disputed. The district court should not be allowed to deny equitable tolling by inference from an unrelated docket activity without an evidentiary hearing. For those reasons, Your Honor, and those stated in the briefings, we ask that you grant equitable tolling or an alternative. I would ask for a remand for evidentiary hearing. Thank you, counsel. The case will be submitted.